

EXHIBIT 10



May 6, 2021

M&T Bank
P.O. Box 840
Buffalo, NY 14240-0840

ATTN: M&T Bank Homeowner Assistance Center Sheila Krajnak Single Point of Contact (SPOC):

I am writing to you today to inform you of my current position regarding my mortgage Loan No. 0031693120 FHA Case No/Sec: 442-4467275/703; property at 102 Artlee Avenue, Butler, PA 16001.

Effective: July 22, 2021, my family and I will be returning as occupants at the property referenced above.

Prior to exiting my forbearance plan October 16, 2021. I would like to re-start my mortgage payments, and this is the reason why I am writing this letter. Along with needing to know the current balance of my escrow account. I believe errors have been made. I will explain those errors later in my letter.

My attorney advised that I should contact you so you can send Attorney Hipp a release that he will sign so that I may speak with M&T Bank to negotiate to receive my home retention options timely at least 90 days prior to exiting my forbearance so I am able to review to resume payments and retain my home.

Douglas G. Hipp, Esquire
Hipp/Kaiser-Hipp
Attorney at Law
1142 Broadview Blvd.
Brackenridge, PA 15014
(412) 478-3603

I am providing a copy of this letter to Attorney Hipp for his awareness. Please provide Attorney Hipp a copy of all and any correspondence you send to me. I am also asking for a copy of his release for my records so that I can negotiate with M&T Bank my home retention options.

I filed Chapter 7 bankruptcy on March 22, 2021. M&T Bank was notified by the US Bankruptcy Court Western District of Pennsylvania Trustee in writing of Case No. 21-20642-GLT for attendance of my 341 meeting of creditors on May 3, 2021 at 12:00pm.

Per letter received from M&T Bank you stated that you are aware that I am in automatic stay from foreclosure pending discharge Ch-7 Bankruptcy filed 3/22/2021, as stated in your letter you gave a written promise to me that you would not foreclose at any time during my forbearance plan. You also stated that no late payment will be reported to credit bureaus for any payments that came due during forbearance which is mandatory and aligned with President Biden's priority to provide economic relief and support under CARES Act and HUD FHA.

Being that you have a secure investment, I am surprised M&T Bank did not attend the meeting since I am currently in paused deferred payment status on a forbearance plan which M&T approved 180 days beginning October 19, 2020 through April 16, 2021 and in letter dated February 25, 2021, you extended 180 days to October 16, 2021.

**NOTE:**

I am making this request well in advance of 90 days (July 16, 2021) of exiting my forbearance plan so that I may receive my options timely to make an election pending completion of Ch-7 discharge debt mortgage promissory note (which is expected to be receive July/August/September 2021 – prior to 10/16/2021 exiting forbearance plan) Interest*Ch-7 discharge clears the promissory note interest debt and should not be used in the computation for modification for new monthly payment.

### 1. Ch7 creditors meeting 5/3/2021:

Attorney Hipp verified with the Trustee at my creditors meeting that my current resident address listed on my current valid Pennsylvania driver's license is **102 Artlee Avenue, Butler, PA 16001** along with my original social security card which is also issued from the state of Pennsylvania born Erie PA.

The Trustee inquired about my current physical location in Puerto Rico. that my home residence is still 102 Artlee Avenue, Butler PA 16001 and I am still the owner of the property by deed which M&T Bank has a lien against for the mortgage promissory note to pay holding my propter as collateral.

The Trustee also accepted my answer that I am on an extend vacation with my husband in Puerto Rico and had my mail forwarded to HC02 Box 5967, Guayanilla PR 00656 related to COVID 19 issues – loss of job / family issue / financial hardship. I have scheduled travel plan (paid in full) returning to my home July 23, 2021.



Additional FACT to consider the Trustee also noted: I am also collecting unemployment compensation from the state of Pennsylvania monthly amount of $3,464.00. You cannot collect unemployment from a state that you are not a resident.

On my bankruptcy petition I elected to (retain and pay). However, I am not definitely clear on how the combination of CH-7 and CARE Act laws will be applied to my options COVID 19 loss mitigation home retention.

I will rely on Attorney Hipp to answer those questions for me to ensure I receive an option that is in my fair and just according to the law and in my best interest.

On my bankruptcy petition I elected the Federal property exemptions 11 U.S.C. § 522(b)(2). On Schedule A/B: 1.1 Ch 7 bankruptcy petition I claimed $190,000.00 is the full value of the property with $12,326.00 equity exempt by 11 U.S.C. § 522(d)(1)

Under the (summarized assets) of my petition I provided the current value of my property $190,000 collateral value based on the 2017 FHA appraisal used by M&T Bank to support your secured claim (lien) used to establish my original mortgage note.

In payoff letter (attached) I received January 11, 2021, M&T bank identified that my principal balance still owed from the original promissory note showed $176,401.46. This same amount is shown on all mortgage statements I received in the mails dated August 1, 2020 to current date.

According to criteria in loss mitigation, I am not supposed to be charged all in advance payment or collection made in advance pay any additional fees or interest prior loss mitigation options (supposed to be offed to me to elect) 90 days prior to the end of my forbearance plan under CARES ACT.

Historically, I was current with my payments since August 17, 2017 through July 30, 2020 (on time never late) and did not fall behind until August 1, 2020 my financial hardship with the added M&T Bank interference hiring MSI Company.

I put my property up for sale by two separate relators which they both over inflated the fair market value of $209,900 by separate analysis comps of house sold in the area. All offers I received were (low ball offers) below the appraised value and I refused to accept them because I would lose my equity invested payments.

I have many pictures that were taken by two separate relators of both the interior and exterior of my property when before I left on 11/1/2020. Both professionals (are relators) from two separate companies who marketed my home on realator.com. My property was not in need of any repairs or maintenance, it was left in move in ready condition. The house was thoroughly cleaned, closed and some rooms were even freshly painted.

**2. MSI Company Changed the doorlock and I am demanding access to my home:**

There was no need for M&T Bank to hire MCI company to re-winterize my home. You hired MSI at your discretion, you advanced those fees by your own initiative to secure your interest for the corporate costs you are requesting in my payoff letter dated January 11, 2021.

On 11/1/2020, I left all other 4 door keys at the home for the relator's access to show my home for sale. When I took the house off the market March 2020 (the idiot relator) locked all the keys in the house.

I received letter from you dated December 2, 2020, you received a property report from MSI on November 27, 2020, indicating the property may be vacant. I notified you by phone conversation several times that the occupancy status you received was inaccurate.

On 12/4/20 MSI affixed a lock box to my property. The door lock was changed and key that opens the door belongs to me. It is attached to my property. I took only one key with me to Puerto Rico. MSI changed the lock on the only door that I had a key to gain access to my home and locked me out of my home.

I am requesting the code to the MSI lock box be provided to me before June 2021. I require the key in the lock box to regain entrance to my home. I am flying to Butler PA to have the utilities turned back on and check the status of the swimming pool, garages to see if all my property and furniture I left in my home is still there. I do not want to have to break a window in to gain access my home and create an expense for myself to repair the window.

Prior leaving 11/1/2020, (at my own expense), I personally winterized my home my-self, by instruction of the water utility company. I drained the pipes and water heater and administered antifreeze in all the toilets, sinks, tubs into the water pipes. I drained all the toilets and filled them with pink antifreeze (flushed several times into the pipes and filled the toilets and tanks again and that was how the toilets were left). Clean with tanks and toilets filled with pink antifreeze. The utilities were cut off (by me), I called the utility company for the electric and water to remove the meters from the home prior to me leaving for Puerto Rico on 11/1/2020.

I have many pictures that were taken by two separate relators of both the interior and exterior of my property when before I left on 11/1/2020. Both professionals (are relators) from two separate companies who marketed my home on realator.com. My property was not in need of any repairs or maintenance, it was left in move in ready condition. The house was thoroughly cleaned, closed and some rooms were even freshly painted.

**NOTE:** I disagree with the accuracy of MSI service stating they cleaned feces from the toilet on date 12/4/2020. The home was inspected on 11/7/2020 and 11/27/2020 with no feces in the toilet. MSI only had access to the home outside of relator showings.

**NOTE:** I also disagree with the claim of completing pressure line tests. How were they performed on 12/4/2020 on the furnace and water lines (if the utilities were off) and meters removed.

You informed me in your letter 12/2/2020 you exercised your forced rights to enter my property to protect your secure it in your interest by winterizing the premises. You hired (MSI) to secure your investment (I did not authorize any of those services or entry of my home to change my door locks); while I am in an approved forbearance plan. It appears that you may have hired MSI company setting up for foreclosure process only one month after I was granted a forbearance plan.

I will be taking pictures of my home when I arrive there in July 2021. I will expect it should be in the same condition or better when I left it on November 1, 2020 since you hired MSI Company to maintain my property.

You advanced your own funds at your discretion and paid those fees and requesting collection from me in advance from my escrow account (without getting my permission) your collection of insurance premiums purchase by you and advanced fees and services you have collected from me has severely depleted my escrow account to a negative balance per the disclosure statement I received dated 10/14/2020; not year-end date of 12/31/2020 history to current date (which I requested and still have not received from M&T Bank) as of current date of this correspondence

This is when I decided to file bankruptcy (fear that if I did sell or lose my home to foreclosure) I did not want a deficiency balance placed for collection and ding on my credit report. I took my house off the market in March 2020 due to the stress it caused me dealing with the greedy realtors looking out for their own welfare (not mine).

By your own discretion, you reserved your rights (per mortgage promissory not) and hired the MSI to continue gain access and enter my property, change my door lock (without my permission) by which you have been charging me for maintenance, repairs, and inspection fees up front collection that you advanced to pay this company you hired to secure your investment and illegally charging them to my escrow account.

3. **Request for Loss Mitigation Home Retention Options:**

I believe I will have the ability to resume making on-time Mortgage Payments. <u>I need a loss mitigation modification package application mailed to me at HC02 Box 5967, Guayanilla PR 00656.</u> However, I will not be able to complete the application until after completion of my Ch-7 bankruptcy.

I am in the process of obtaining hazard insurance from Erie Insurance my previous insurance agent. I will mail a copy of the insurance rider back with my loss mitigation modification documents.

I have made travel arrangements to travel back from Puerto Rico to Butler, PA. The property it will no longer be vacant effective July 23, 2021. I will resume care of the property at that time so please notify MSI company (you hired) NOT to access my home (invasion of my privacy) after June 30, 2021 unless they want to be verbally abused and legally assaulted.

I would like to inquire if the loan modification options include the FHA streamline refinance of my current principal balance of $176,401.46 is an option for (loss mitigation home retention). The FHA Streamline Refinance resets your mortgage with a lower interest rate and monthly payment. FHA Streamline refinance has the following main advantages:

- No appraisal is required. ...
- No verification of income or employment is required. ...
- The process is easier and faster
- FHA streamline refinance program doesn't require a full credit check, it may be a good refinance option if you have bad credit...
- FHA streamline rates are the same as on regular FHA mortgages. ... currently average 2.5% (3.478% APR) which is less than my current 3.75% APR.
- The current (P&I) payment should not increase
- There is no prepayment penalty

4. **Escrow Account and Lender-Placed Insurance:**

On January 7, 2021 M&T Bank notified me by letter you obtained a lender-forced placed hazard insurance policy $1552. The declaration certificate showed the effective date purchased 10/29/2020 to expire 10/29/2021. The Forced placed Insurance transaction date showed on 12/31/2020 on my 01/1/2021 mortgage statement.

duplicate charges disbursed (supposably) made to pay hazards policy insurance premiums obtained by me (but) appears funds were used to cover the corporate cost of the lender-forced placed hazard insurance policy form my escrow account without gaining my permission.

My records show my hazard insurance premiums $1,122 was paid to Erie Insurance on 7/17/20. However, disbursement of hazard insurance premiums $1,122 were completed in July 2020 to Erie Insurance were cancelled effective 10/29/2020 and proration premiums were refunded to me. My records show my end balance was $2,442.97.

I noticed another error for hazard insurance payment of $1,122 to Erie insurance paid July 17, 2020 and again on October 29, 2020 (looking at the annual escrow account disclosure statement dated 10/14/2020) that you provided. But, the declaration issue date was 1/7/2021 with the effective date of 10/29/2020.

A <u>duplicate disbursement</u> for hazard insurance premiums of $1,122 was again taken from my escrow account October 29, 2020 (without my consent); it appears you have collected funds to purchase the Lender Placed Insurance from the American Security Insurance company policy issue on date on 1/7/2021 and back dated the effective date is retroactive 10/29/2020 expiring 10/29/2021 which cost $1,552.

I want to see those premiums $1,122 duplicate premiums refunded to my escrow account because I did not authorize you to utilize my escrow account fund to pay your forced insurance premiums.

When I provide you my proof of obtaining hazard insurance effective July 1, 2020, I would like proof of how you adjusted the overlapping periods 7/1/21 to 10/19/21. I believe the monthly cost is $129.33 should be the monthly adjustment cost.

5. **Request History of Escrow Account for years 2019/2020/2021 (10/1/2019 to 07/31/2020) continue 8/1/2002 to 10/16/2021:**

I found errors on the 10/14/2020 escrow statement; needs corrected prior to providing me my options for loss mitigation.

I requested by letter dated December 29, 2020 to M&T Bank to **provide me a history of my escrow account** since the last annual statement 2019 because I never obtained from you my year end of 2020 annual analysis escrow disclosure statement; I have not received yet.

I am requesting M&T Bank to provide history of my actual escrow account receipts and disbursement payments. On the history I want to see every payment entry made into and out of the escrow account beginning with (October 4, 2019) ending on (7/17/2020). This was my last payment made posted to my escrow account – show my escrow account balance on 7/17/2020.

Then show 7/18/2020 to 10/16/2021 to current month of day and year and projected payment through end of forbearance 10/16/2021).

The reason why I am requesting the history begin 10/4/2019 is I found errors. I want corrections made to my escrow account.

I mailed an extra payment by check for $245.46 dated October 30, 2019 which was cashed 11/1/2019 (see copy of check attached) but this check does not seem to be placed into my escrow account. I see a note on my mortgage state on 11/4/2019 the check was stated it was placed into escrow. I believe my payment should not have increase on December 1, 2019 because I paid the escrow shortage + an additional $175 to bring the balance above what was required.

I want to know the actual balance of my escrow account beginning with 10/4/2019; which my records show it should be $926.73.

9/19/20

M&T Bank advanced payment from my escrow account to my County 2021 property tax bill $795.82 on 4/10/2021 see attached tax bill check cleared – show my balance on 4/10/2021.

I highlighted in yellow (I feel are errors).

I want to see all of the PMI actual payment made between this time.

Sincerely,

*Joanne Roman* [signature]
Joanne Roman

**LEGAL REFERENCES (s):**

1. Mortgagee Letter 2020-06, FHA's Loss Mitigation Options for Single Family Borrowers Affected by the Presidentially-Declared COVID-19 National Emergency in Accordance with the CARES Act, date 04/01/2020

2. Mortgagee Letter 2020-22, FHA's COVID-19 Loss Mitigation Options, date 07/08/2020. FHA Loss Mitigation Options Mortgagee Letter 2020-2022 Summary of Changes – LINK
https://www.hud.gov/sites/dfiles/SFH/documents/COVID-19%20Loss%20Mitigation%20Options%208.5.20.pdf

3. Mortgagee Letter 2020-34, Update to the Date for Approving a COVID-19 Forbearance or COVID 19 Home Equity Conversion Mortgage (HECM) Extension, date 10/20/2020

4. CARES ACT Covid 19 emergency loss mitigation disposition home retention / loan modification options for occupant was released by Public Affairs HUD No. 21-023 on Tuesday 02/16/2021 aligned with President Biden's priority to provide <u>economic relief and support</u> to working families by providing urgently-needed housing relief for homeowners which expanded the use of FHA's streamlined COVID-19 loss mitigation home retention and home disposition options to all homeowners who are behind on their mortgage payments by at least 90 days.

    o  A trial payment plan is not required for a borrower to be eligible for COVID-19 Loss Mitigation Options
    o  For any owner-occupant borrowers who receive the COVID-19 Forbearance, the Mortgagee must evaluate the borrower for the COVID-19 Standalone Partial Claim no later than the end of the forbearance period(s).
    o  The Borrower indicates they have the ability to resume making on-time Mortgage Payments

5. HUD.GOV – LOSS MITIGATION Mortgagor Eligibility: **Any FHA-insured borrower who is in default for at least 90 days (120 days for partial claim) and who occupies the mortgaged property as a primary residence may be eligible for home retention loss mitigation.**

    Legal Authority: **Sections 204(a) and 230 of the National Housing Act. Regulations are at 24 CFR part 203.**

    **Administering Office:** Assistant Secretary for Housing-Federal Housing Commissioner, U.S. Department of Housing and Urban Development, Washington, DC 20410-8000.

    **Information Sources:** HUD's National Servicing Center. <u>On the Web</u>

    **Current Status:** Active.

    HUD encourages mortgagees to utilize loss mitigation by reimbursing administrative costs (title reports, recording fees) involved in these actions and by paying financial incentives. Though mortgagees have flexibility in selecting the loss mitigation strategy appropriate for each borrower, participation in the loss mitigation program is not optional. Prior to initiation of foreclosure, mortgagees are required to evaluate all defaulted borrowers for loss mitigation options eligibility, quickly activate appropriate loss mitigation options, provide housing counseling availability information, consider all reasonable means to assist the borrower in addressing the delinquency, and retain written documentation of compliance with loss mitigation requirements. Failure to comply may result in the loss of incentive compensation, interest curtailment, and other financial and administrative sanctions, including withdrawal of HUD's approval of a mortgagee.

    Prescribed set of default workout options that allow lenders to effectively work with delinquent FHA borrowers to find solutions to avoid foreclosure.

    **Nature of Program:** FHA Loss Mitigation delegates to mortgagees both the authority and the responsibility to utilize certain actions and strategies to assist borrowers in default or imminent default retain their homes, and/or reduce losses to the insurance fund that result from mortgage foreclosures. Mortgagees may utilize any of several loss mitigation options that lead to home retention, including: FHA-HAMP, long-term special

forbearance, mortgage modification, and partial claim (an option exclusive to HUD wherein the Department makes a no-interest loan to the borrower in an amount sufficient to reinstate the mortgage). If the borrower is unable or unwilling to support the mortgage debt, servicers must consider use of other loss mitigation tools, including a pre-foreclosure sale or a deed in lieu of foreclosure, before initiating legal action to foreclose the mortgage.

o  On March 27, 2020 the Coronavirus Aid, Relief, and Economic Stimulus (CARES) Act was signed into law. On April 1, 2020, HUD published ML 2020-06, establishing the Forbearance for Borrowers Affected by the COVID-19 National Emergency declared on March 13, 2020 (COVID-19 Forbearance) and the COVID-19 National Emergency Standalone Partial Claim (COVID-19 Standalone Partial Claim), as well as an extension period for Home Equity Conversion Mortgages (HECM) affected by COVID-19.

o  Mortgagees must offer eligible borrowers the COVID-19 **Loss Mitigation Home Retention Options** due to the COVID-19 National Emergency by procedures set forth in the ML 2020-22 no later than 90 days from the date of the ML but, may begin offering the new options immediately.

o  The Consumer Financial Protection Bureaus (CFPB) regulations explain you must provide loss mitigation options to resume payment status at least 90 day prior to exiting forbearance plan on which mine ends 10/16/2021.

o  If a Mortgagee experiences additional delays out of their control, including past the automatic 90-day extension for the recorded Mortgage, that impact delivery Claim modification documents, Mortgagees may file requests for an additional extension in accordance with Requests for Extensions of Time for Delivery of Claim Documents (III.A.2.k.v(J)(7)).

o  **FHA ML 2020-22 Letter:** COVID-19 Forbearance allows for one or more periods of reduced or suspended payments without specific terms of repayment, regardless of the delinquency status of the Mortgage and a trial payment plan is not required for a borrower to be eligible for COVID-19 Loss Mitigation Options / COVID -19 Loss Mitigation Home Retention Options.

o  Where the Mortgage was current or less than 30 Days past due as of March 1, 2020, are eligible to be reviewed for the following streamlined COVID-19 Home Retention Options Mortgagee Letter 2020-22,

o  For eligible Owner-Occupant Borrowers who do not qualify for the COVID-19 Standalone Partial Claim, the Mortgagee must review the Borrower for a COVID-19 Owner-Occupant Loan Modification, which modifies the rate and term of the Mortgage at the end of the COVID-19 Forbearance period.

o  Owner-Occupant Borrowers are eligible to be reviewed for all of the following but the Borrower receives only one permanent COVID-19 Home Retention Option:

   o  COVID-19 Standalone Partial Claim;
   •  COVID-19 Owner-Occupant Loan Modification;
   •  COVID-19 Combination Partial Claim and Loan Modification; and
   o  COVID-19 FHA Home Affordable Modification Program (FHA-HAMP) Combination Loan Modification and Partial
   o  Non-Occupant Borrowers are eligible to be reviewed for the COVID-19 Non-Occupant Loan Modification who were current or less than 30 Days past due as of March 1, 2020 must be reviewed for the COVID-19 Non-Occupant Loan Modification.

o  Consumer Financial Protection Board (CFPB) Version 1 Last updated 4/3/2020. The Bureau's Mortgage Servicing Rules-FAQs related to the Covid-19 Pandemic for Annual Escrow Statement Question - related to Escrow Shortages states (as follows):

   •  **Servicers must still conduct the analysis and send the statement within 30 days of the completion of the escrow account computation year. Regulation X, 12 CFR 1024.17(i).**

- Regulation X, 12 CFR 1024.17(i)(1)(vii) requires servicers to include an <u>explanation of how the consumer will pay any shortage or deficiency</u>, it does not require servicers to collect it.

- In addition, there is an exemption from providing an annual escrow account statement under Regulation X, 12 CFR 1024.17(i)(2) when the borrower is more than 30 days overdue.

- If the servicer does not issue the annual statement pursuant to this exemption and the loan subsequently is reinstated or otherwise becomes current, <u>the servicer must provide a history of the account since the last annual statement (which may be longer than 1 year) within 90 days of the date the account became current</u>.

- Regulation X, 12 CFR 1024.17(i)(2) Consumer Financial protection Bureau (CFPB) Real Estate Settlement Procedures Act (Regulation X) and Truth in Lending Act (Regulation Z) Mortgage Servicing Rule states:

  8.4. <u>What is force-placed insurance</u>? "Force-placed insurance" is hazard insurance the servicer obtains on behalf of the owner or assignee. (§ 1024.37(a)(1)).

  The following insurance does not constitute "force-placed insurance" under this section.

  Hazard insurance the borrower obtains and that you renew using escrow funds (including funds you advance to escrow) per the escrow account provisions in §1024.17(k)(5) **<u>or by advancing your own funds at your discretion if the borrower agrees</u>**. (§1024.37(a)(2) "Force-placed insurance" is hazard insurance the servicer obtains on behalf of the owner or assignee. (§ 1024.37(a)(1).

  You are considered <u>unable to maintain the borrower's hazard insurance</u> and may therefore obtain force-placed insurance in accordance with the general rules <u>rather than advance funds through escrow</u>, if you have a reasonable basis to believe either that the hazard insurance provider has canceled the policy **<u>for reasons other than non-payment or that the property is vacant.</u>**